The Chancellor.
Job Irick, late of tbe county of Burlington, deceased, left, at tbe time of Ms death, three minor children. He left a will, and appointed his brothers, William Irick and John S. Irick, and his brother in law, William Bidgway, his executors. They were also left by the will guardians of the minor children. They took upon themselves the execution of the will, and they assumed the guardianship of the minor children, entering into bonds, as required by the statute, for the faithful discharge of their duties as guardians. Their respective duties, both as executors and as guardians, were discharged by them separately. As guardians, they gave separate bonds, and as executors and guardians, they settled separate accounts with the Orphans Court.
In the term of February, 1842, of the Orphans Court of the county of Burlington, William Bidgway made a final settlement of Ms accounts as executor, showing a balance in his hands of $4792.06. In November term, 1843, he settled his accounts in the same court as guardian, and charged himself with the balance found in his hands as-executor, by his account as settled. The account shows a large balance due from the guardian.
Joseph Kirkbride was the security on William Bidgway’s bond as guardian. William H. Irick, one of the minor children, after arriving at age, caused a suit to be instituted in the Supreme Court on this bond. Joseph Kirkbride is deceased. This bill is filed by his administrator. It charges, that the accounts settled in the Orphans Court by William Bidgway, both as executor and as guardian, are erroneous, and are a fraud upon Ms security, *271 and asks the interference of the court for his protection. The bill has been answered by all the defendants, and the cause set down, and brought to a hearing upon the bill and answers.
As the positive fraud charged in the hill is fully denied, and the supposed errors specified satisfactorily explained by the answers, it was admitted, on the argument, that the controversy between the parties is reduced to a matter of one single item charged in the accounts against the guardian.
At the time of the death of Job Irick, William Eidgway was indebted to liim on a bond, on which there was due, at the time Ridgway settled his accounts as executor, the sum of §>2926. In his settlement as executor, he charges himself with this amount; and as, in his settlement of his account as guardian, the balance found against him as executor was charged to him as guardian, his surety upon these proceedings stands responsible for this amount. This bond was, at the time of the settlement, in the hands of William Irick, a co-oxecutor, and it still remains in his hands uncancelled. The complainant submits, that whatever may be the effect of these settlements and proceedings in the Orphans Court, as between William Ridgway and the other executors or the minor children, that the same do not bind Joseph Kirkhride, the surety, for the amount of the bond; hut that Joseph Ifirkbride, iu becoming surety for William Ridgway as guardian, became surety for such moneys only as came to Ms hands as such guardian, and not surety for the individual debt on the bond of Ridgway to Job Irick.
If a person becomes surety for one as administrator, who at the time is a debtor to the estate and is insolvent, and is never able to discharge such- indebtedness, such surety is not hound for such a delinquency of his principal. Ho is only bound for the faithful performance of his duties as administrator. It could he no breach of trust or delinquency in duty for the administrator not to do what *272 is beyond Ms power and control to perform. If under sucb circumstances, tbe administrator should, in the settlement of his accounts with the court, charge himself with the debt, and the accounts should be passed in such a shape as to bind the surety for the debt, the surety would be relieved, upon application to the proper tribunal, from such responsibility. It would be a fraud upon the surety to exact the debt from him, whether the administrator did or did not, by his mode of accounting, contemplate a fraud. But if, at the time the surety assumes his responsibility, the administrator owes the estate, and is solvent and able to pay the amount of the debt, will be considered, in law and equity, as so much money in his hands as administrator at the time, and, consequently, the surety will be responsible for it. It is the duty of the administrator to collect the debts of the estate without delay ; and certainly any delay which places the debt he himself owes the estate in jeopardy, and results in its loss, is a gross violation of his duty as administrator.
Let us apply this principle to the present case. At the time of the testator’s death, "William Bidgway owed him a debt upon a bond. It was due and payable. He assumed the' duties of executor, and settled Ms accounts in the Orphans Court. At the time of this settlement he was able to pay. The evidence of the debt was in the hands of one of his co-executors, William Irick. What was his duty as to this debt in accounting as executor? The statute makes the debt assets in his hands, and makes it his duty to account for it in the same manner as any other part of the personal estate. Elmer 599, § 26. It is true the evidence of the debt was in the hands of a co-executor ; but he could not bring suit upon it, for the debt was not denied. The debt was properly accounted for by William Bidgway. Nine months after this, Bidgway accounted with the court as guardian. The balance in his hands, as shown by his account as executor, belonged to him as guardian. The moment he accounted as executor, *273 and tlie balance due from the executor to the guardian was ascertained, that balance was in Ms hands as guardian. If not then, when was it to be considered in his hands as guardian ? The mere formality of Ms transferring it from one account to another, crediting himself as executor, and charging himself as guardian, could not certainly be necessary. But if any formality of the kind was required, it was fulfilled in the settlement of his accounts as guardian. He then charged himself with this balance, exhibited it to the court, and the court decreed upon it. If any formality was required, this was surely enough. It was Ms duty to charge himself with this balance. It was so much in his hands as guardian. He was solvent at the time, and all pretence that there was any fraud practised or contemplated in order to charge the surety, is denied by the answer.
The only question is, who «shall be the losers by the present insolvency of the guardian, his surety or the minor children ? Mr. Kirkbride was one of the appraisers of the personal property of Job Irick, and he appraised this debt as good in the hands of the executors. It is because the guardian has not faithfully discharged his duty, that he is unable to account to his wards. It was for such unfaithfulness that his surety became responsible.
The bill must be dismissed. As it is a bill filed by an administrator, and as there are some circumstances which I have not alluded to, in connection with the accounts, which call for explanation, let the decree be made without costs.